UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| JOANNE M. MILLAY, *as parent of* *minor child YRM*, | ) ) ) | |
| Plaintiff | ) ) | |
| v. | ) ) | No. 09-cv-411-B-W |
| SURRY SCHOOL DEPARTMENT, | ) ) ) | |
| Defendant | ) | |

**RECOMMENDED DECISION ON MOTIONS TO DISMISS**

This civil action arises under the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400-1487, and presents a petition by the mother of a disabled student who seeks judicial review of a due process hearing decision. In addition to seeking judicial review under the IDEA, the mother is also pursuing civil claims against the school district defendant under three other federal statutes: the Americans with Disabilities Act, the Rehabilitation Act, and the Civil Rights Act of 1871. The claim under the Civil Rights act is also extended to six individual defendants: Superintendents James Boothby and Omar Norton, Special Education Directors Melissa Beckwith, Roland Caron, and Lynn Maddocks, and Attorney Eric Herlan. Now pending are motions to dismiss by the Surry School Department (Doc. No. 13) and by the individual defendants (Doc. No. 15) asking the Court to dismiss all claims but for the claim arising under the IDEA and asserted in Count I. The Court referred the motions for report and recommendation pursuant to 28 U.S.C. § 636. For reasons that follow, I recommend that the Court grant the motions.

**Background**

This case presents a dispute between Joanne Millay, mother of special needs student YRM, and the Surry School Department and certain administrators, over the appropriateness of special education programming provided to YRM. The instant civil action follows upon a due process hearing addressed to the appropriateness of programming and placement decisions associated with a summer 2008 extended school year and the 2008-2009 school year. Another action is pending in this Court in connection with a hearing officer's decision addressed to the appropriateness of the placement ordered for the 2007-2008 school year and the appropriateness of programming extending back to spring 2006. (Case No. 07-CV-178-B-W.) Like this action, that other action also includes claims against the Surry School Department for alleged violations of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act, but unlike this action, it does not include a claim under the Civil Rights Act or claims against individual defendants.

The Amended Complaint in this proceeding contains a litany of alleged errors and omissions by those responsible for ensuring that the student, YRM, receive a free appropriate public education in accordance with the Individuals with Disabilities Education Act (IDEA). The allegations reflect that, since 2007, Surry has ordered placement for the school year at a private day treatment location whereas Ms. Millay has steadfastly insisted that the only appropriate placement is at a public high school. Ms. Millay complains that Surry's failure to provide a free appropriate public education to YRM in the least restrictive environment requires several years of compensatory education. Ms. Millay also wishes to recover general compensatory damages and punitive damages for the suffering she and YRM have endured on account of Surry's failure to adequately provide the special education services that she maintains

the IDEA required Surry to provide. To achieve this end, Ms. Millay alleges that Surry's failure to comply with the IDEA was an act of "obstructionism" and "deliberated indifference" motivated by retaliatory animus over earlier complaint activity under 20-A M.R.S. § 7206 and over Ms. Millay's other advocacy on behalf of her daughter. (Am. Compl. ¶¶ 9-11.) She expands upon her retaliation theory by alleging that Surry overstated the level of YRM's programming needs to keep YRM out of her ordinary public school, yet threatened or made truancy reports due to Ms. Millay's refusal to bring YRM to school. (Id. ¶¶ 27, 30.)

Ms. Millay also alleges that Surry's evaluations and placement decisions were all designed to militate against Ms. Millay's position and to raise an "impenetrable barrier" to YRM's entry into her local high school. (Id. ¶ 25.) According to Ms. Millay, Surry kept enhancing the services ordered in YRM's Individualized Educational Program (IEP) in order to exclude YRM from the public school placement that would ordinarily have been available to her. (Id. ¶¶ 46, 46.[1]) As a component of this alleged approach to programming, Ms. Millay contends that Surry violated the creation process for YRM's IEP by failing to support the increased services with any professional evaluations or presentations to the Pupil Evaluation Team responsible for IEP development (id. ¶¶ 52-53, 56) and by failing to justify a private, day treatment placement as opposed to placement in a public school life skills program. (Id. ¶¶ 7, 22.)

Ms. Millay concludes her recitation of "facts common to all counts" with the following allegation:

> 58. The District's violations of YRM's education rights are construed by Plaintiff as both retaliatory and punitive (for the violations of law cited by the

---

[1] There are two paragraphs numbered 46.

>MDOE in its July 2007 report) and these ought to have been a subject of concern for the hearing officer, who instead misstated federal law in her decision so as to conform to what had occurred, rather than to what was licit.

According to Ms. Millay's complaint, even a temporary placement in a day treatment setting was unthinkable because members of YRM's Pupil Evaluation Team had indicated that YRM needed to be placed in the school setting that would provide long-term services, so that she could become accustomed to the location and the staff and so the staff could become accustomed to her needs.  (Am. Compl. ¶ 99.)  She also alleges that there was no legitimate "behavioral" justification for this placement.  (Id. ¶ 100.)

Ms. Millay's allegations specific to counts II, III, and IV are as follows:

### COUNT II (SECTION 504)

\* \* \* \*

>182[.]  As described above, the actions and omissions of Defendant were intentionally discriminatory on the basis of disability, and therefore violated YRM's rights under Section 504, entitling her to injunctive relief and monetary damages, as are appropriate in the circumstances.  Those actions and omissions were also retaliatory in whole or in part for Plaintiff's previous advocacy on behalf of YRM and previous findings against the District.

### COUNT III (ADA)

\* \* \* \*

>184[.]  The actions and omissions of Defendant were intentionally discriminatory on the basis of disability and were in whole or in part retaliatory for Plaintiff's previous advocacy on behalf of YRM, and thereby violated YRM's rights under the Americans with Disabilities Act, entitling her to injunctive relief and monetary damages, as are appropriate in the circumstances.

### COUNT IV (SECTION 1983)

\* \* \* \*

>186[.]  The actions of Defendant, its administrators and contracted entities, including and particularly former union 92 (Surry) Superintendents James

> Boothby and Omar Norton, former special education directors Lynn Maddocks, Roland Caron and Melissa Beckwith of the Education Cooperative, and Surry's attorney Eric Herlan, through their willful neglect of their responsibility to assure the provision of FAPE to YRM in her Least Restrictive Environment and not to obscure or vitiate her rights, and through their disregard and violation of her education and civil rights under federal and state law, inflicted harm, including loss of educational services and benefit, emotional and physical suffering, trauma, and regression until such time as YRM can recover to the extent possible the delays caused by their acts and neglect; and inflicted harm on her family through emotional suffering, loss of time, of professional development, of income and of career; and in addition caused YRM's family to bear the costs of prolonged litigation to attain an end that had already been guaranteed by law.
>
> 187[.]  Federal laws and regulations governing the duty of the named individuals are unambiguous and clearly established.  The pervasive mistreatment of YRM, a totally defenseless student who is deaf-blind, while at the Surry Elementary School and in their care, which led to her emotional and physical injury, the subsequent denial to her of even those services mandated by law which might have somewhat stemmed her regression, and her improper exclusion from the appropriate program in which she was enrolled and which she was entitled to attend, constitute violations of her rights and her person so extreme, severe, and unwarranted as to shock the conscience.
>
> 188[.]  The individuals responsible for the actions and omissions of obligation set forth herein were acting under color of state law, thereby violating Section 1983.
>
> 189[.]  By virtue of the positions in which they are or were employed, the named individuals, and each of them, knew or should have known that their actions or inaction by refusing and failing to provide YRM with FAPE in her LRE constitutes a denial of the student's right to access the federally funded program and services to which she was entitled by state and federal law.
>
> 190[.]  The acts of the named individuals, and each of them, as herein alleged, in their individual capacities, were willful, wanton, malicious, and oppressive, and justify the awarding of punitive damages.

## Discussion

There are two motions to dismiss pending, one by Surry School Department (Doc. No. 13) and one by the Individual Defendants (Doc. No. 15).  I address them in order, after outlining the standard that applies under Rule 12(b)(6).

5

A motion under Rule 12(b)(6) tests the legal sufficiency of the complaint, whether the claim, as alleged, is sufficient "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  The plaintiff is not required to prove her allegations in order to overcome the motion.  The question is simply whether the factual allegations, taken as true, are enough to "establish a 'claim to relief that is plausible on its face.'"  Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 320 (1st Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Plausibility, rather than possibility, is the benchmark.

Application of the plausibility standard to any given cause of action is, at present, somewhat uncertain.  The general rule governing pleadings is Rule 8 of the Federal Rules of Civil Procedure.  As it is written, Rule 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief.  The Rule condones "notice" pleading, a form of pleading that is minimally sufficient to give the defendant fair notice of the grounds for the claim.  Twombly, 550 U.S. at 555.  Yet, while a complaint need not contain detailed factual allegations, the plaintiff cannot rely entirely on "a formulaic recitation of the elements of a cause of action," id., "an unadorned, the-defendant-unlawfully-harmed-me accusation," Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009), or similarly bald assertions.  A court need not accept conclusory recitations of legal standards as factual allegations at all, because such recitations do not tend to divulge the factual underpinnings of the case and require the court reviewing the complaint to speculate as to the existence of discoverable facts supportive of the legal theory at hand.  Id. at 1949-50;  Twombly, 550 U.S. at 555-56.

**A.      Surry's Motion**

In the first motion (Doc. No 13), the Surry School Department seeks dismissal based on arguments that the ADA and the Rehabilitation Act claims are (1) precluded by the IDEA claim

(id. at 5-9); (2) precluded for failure to exhaust (id. at 9-11); and (3) factually implausible (id. at 11-15). With regard to the § 1983 claim, Surry argues that Ms. Millay cannot base such a claim on a violation of the IDEA (id. at 15-16), has failed to allege that a custom or practice resulted in a constitutional violation (id. at 16-18), and makes implausible allegations (Id. at 19-20). I conclude that Surry is entitled to dismissal of these additional claims because they are subsumed by the IDEA.

> Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). Similarly phrased, the ADA mandates that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Because "Title II of the ADA was expressly modeled after Section 504 of the Rehabilitation Act," Theriault v. Flynn, 162 F.3d 46, 48 n.3 (1st Cir. 1998), the Court analyzes these two independent claims in the "same manner." K v. City of S. Portland, 407 F. Supp. 2d 290, 296 (D. Me. 2006).

Millay v. Surry Sch. Dep't, 584 F. Supp. 2d 219, 235 (D. Me. 2008).

> ### 1. The ADA and Rehabilitation Act claims mirror the IDEA claim and depend on the IDEA's heightened, special education-specific protections and are therefore subject to dismissal.

The IDEA states the following rule of construction:

Nothing in this title shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this part, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this part.

20 U.S.C. § 1415(l). The First Circuit has observed that this provision reflects that "the IDEA does not preclude claims . . . under the ADA [or] the Rehabilitation Act." M.M.R.-Z v. Puerto Rico, 528 F.3d 9, 14 (1st Cir. 2008). However, it has also "held that relief under these other

statutes is not available where '[p]laintiffs' case turns entirely on the rights created by statute in the IDEA.'" Id. (quoting Diaz-Fonseca v. Puerto Rico, 451 F.3d 13, 29 (1st Cir. 2006)).

In Diaz-Fonseca, the First Circuit considered an appeal brought by the Commonwealth of Puerto Rico, its Department of Education, and two individual defendants following a jury trial on claims under the IDEA, the Rehabilitation Act, and the ADA, in which the jury awarded both compensatory and punitive damages to the parent of a child with learning disabilities that qualified for benefits under the IDEA. 451 F.3d at 19. The First Circuit vacated the damages awards, holding, among other things, that:

> 1. Where the essence of the claim is one stated under the IDEA for denial of FAPE, no greater remedies than those authorized under the IDEA are made available by recasting the claim as one brought under 42 U.S.C. § 1983, Title II of the ADA, or section 504 of the Rehabilitation Act.
>
> 2. No punitive damages may be awarded in such a suit, regardless of which of the causes of action listed above is invoked.
>
> 3. No general compensatory damages may be awarded in such a suit, regardless of which of the causes of action listed above is invoked.
>
> 4. Monetary recovery in such suits is limited to compensatory education and equitable remedies that involve the payment of money, such as reimbursements for educational expenses that would have been borne by defendants in the first instance had they properly developed and implemented an IEP. Under the category of "reimbursement," parents may recover only actual, not anticipated, expenditures for private tuition and related services.
>
>  5. No claim for monetary relief is stated in such cases against individual school administrators who are sued in their personal capacities.

Id. at 19-20. The "crux of the dispute" in Diaz-Fonseca was similar to the crux of the dispute here. The parent sued the defendants because they failed to provide the child with the services the mother demanded:

> The crux of the dispute is that while the parties agreed that Lyssette could not engage in ordinary physical education and thus needed adaptive physical education, they could not agree over what type of adaptive physical education was appropriate. The public schools lacked swimming pools and declined to pay for swim lessons. Diaz insisted that her daughter needed such lessons and that the schools should have to pay for them, as well as for transportation to and from school and for the psychiatric treatment Lyssette required after she became depressed because she could not engage in physical education with her classmates. Feeling frustrated that Lyssette was not receiving any adaptive physical education and that the defendants had engaged in a classic bureaucratic runaround, Diaz unilaterally removed Lyssette from public school in 2003 and placed her in a private school.

Id. at 20. Like Ms. Millay, Diaz found some succor in administrative proceedings. Like Ms. Millay's allegations, the defendants flouted the administrative remedy and stonewalled her attempts to achieve the programming she sought for her daughter, including her request for placement at a specific public school (although the assigned placement was an ordinary public school, not a private day treatment location). Id. at 21-22. Despite these circumstances, circumstances that the jury found sufficient to support an award of punitive damages, the First Circuit held that Diaz could "not use § 1983—or any other federal statute for that matter—in an attempt to evade the limited remedial structure of the IDEA," because the underlying claim was one of violation of the IDEA. Id. at 29. The Court reversed and vacated the punitive and compensatory damages awards and ordered their dismissal on remand. Id. at 43. Although it could be questioned whether dismissal should apply exclusively to the pleas for punitive and compensatory damages, the panel in Diaz held that the plaintiff had "no viable independent claim under Title II of the ADA or section 504 of the Rehabilitation Act." Id. at 29. This makes practical sense, because a contrary ruling would override the IDEA's provision for limited judicial review, as opposed to *de novo* proceedings following a full-blown discovery process.

9

In a subsequent opinion, another panel of the First Circuit recognized that a retaliation theory could evade the holding of Diaz-Fonseca when the claim did not mirror the IDEA claim. M.M.R.-Z., 528 F.3d at 14-15. Although the allegations that informed the decision in the case of M.M.R.-Z were not reproduced in the panel's opinion, the retaliation at issue was alleged to have arisen on account of a report of criminal conduct made against a teacher, rather than a report of IDEA violations, and the retaliatory conduct was alleged as a deprivation of educational services, rather than programming decisions that resulted in a placement in a private day treatment location that the parent refused to let her child attend. Id. at 11-12.

In this case, Ms. Millay complains of the denial of a special education program having educational benefit for YRM. (Pl.'s Consolidated Reply at 3, Doc. No. 18.) She complains that Surry "had not offered YRM any placement other than Surry for all of the years she had attended," even though Surry was unable to deliver a program equal to YRM's need. (Id. at 4.) She complains that the IDEA will not remedy the damages she and her daughter have suffered: "[T]he violations of federal laws other than IDEA, *while built upon its initial violation*, grossly added and multiplied the damage to the student and finally to her family[.]" (Id. at 5 (emphasis added).)[2] These additional counts for disability discrimination are bound up in the IDEA's heightened requirements and should be dismissed under the rationale of Diaz-Fonseca. I agree with Surry's characterization that "Plaintiff's entire complaint revolves around FAPE, least restrictive placements, procedural protections, and the other nuts and bolts of the IDEA" (Doc.

---

[2]  Ms. Millay cites Winkelman v. Parma City Sch. Dist., 550 U.S. 516 (2007), as somehow contrary to Diaz-Fonseca. (Pl.'s Consolidated Reply at 6.) In Winkelman, the Supreme Court recognized the right of a *pro se* parent to represent a child on an IDEA claim. Winkelman does not aid Ms. Millay in relation to the precedential impact of Diaz-Fonseca.

10

No. 13 at 6) and that her assertions "are nothing more than that [Surry]³ made the wrong decisions about programming and placement, and for the wrong reasons[,] because Surry officials were allegedly mad at her" (id. at 7).

Ms. Millay's argument that an overly severe description of YRM's behavioral issues and needs amounts to actionable discrimination or retaliation is not appropriate under Diaz-Fonseca. Such assertions by a school entity fall squarely within the bounds of the IEP decision-making process. If such assertions could support independent claims of discrimination or retaliation, then essentially every challenged evaluation or assessment could. Raising a ground for denying or justifying a programming or placement decision is part and parcel of the IEP process. So is the process of characterizing the nature and severity of a student's learning disability. These assertions are not actionable under the Rehabilitation Act or the ADA because they are inherently claims arising by virtue of the procedural framework mandated by the IDEA. Absent the IEP process designed to carry out the special education objectives of the IDEA, this scenario would not have arisen and Surry would not have been exposed to liability for making evaluative statements in order to justify its placement decision over Ms. Millay's placement request. See Burke v. Brookline Sch. Dist., No. 06-cv-317-JD, 2007 U.S. Dist. Lexis 7577, *5-7, *9-14, 2007 WL 268947, *2-5 (D. N.H. Jan. 29, 2007) (dismissing claims under Section 504 of the Rehabilitation Act and the ADA, despite claims of intimidation regarding truancy, retaliation, disparagement, and inferior treatment, pursuant to Diaz-Fonseca), aff'd, 257 Fed. Appx. 335 (1st Cir. Dec. 13, 2007) (per curiam) ("This case is summarily affirmed under Diaz-Fonseca v. Puerto Rico, 451 F.3d 13 (1st Cir. 2006)."), cert. denied, 128 S. Ct. 2934 (2008).

---

3   Surry says that the decisions were made by "the IEP team," but in her IDEA claim Ms. Millay squarely challenges the contention that the team supported the disputed decisions. Consequently, I have rephrased the statement to emphasize that the ultimate responsibility for the decision rests with Surry rather than with YRM's Pupil Evaluation Team.

The point of Diaz-Fonseca is not that the IDEA bars a plaintiff from bringing a complementary action under the Rehabilitation Act or the ADA, under any circumstances, but that it bars claims under these statutes when the plaintiff's assertion of a violation is grounded on the heightened protections available by virtue of the focused procedural and substantive rights created in the IDEA. M.M.R.-Z v. Puerto Rico, 528 F.3d 9, 14 (1st Cir. 2008); Diaz-Fonseca, 451 F.3d at 29. This is such a case and this District is bound to follow Diaz-Fonseca, notwithstanding a divergence of opinion among the circuits. Eulitt v. Me. Dep't of Educ., 307 F. Supp. 2d 158, 161-62 (D. Me. 2004).

### 2. The Section 1983 claim against Surry should be dismissed, whether or not the ADA and Rehabilitation Act claims are dismissed.

Title 42 U.S.C. § 1983 provides in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Section 1983 enables individuals to pursue civil actions to vindicate federal constitutional and federal statutory rights when they have suffered a deprivation at the hands of a state actor. Fitzgerald v. Barnstable Sch. Comm., 129 S. Ct. 788, 793-94 (2009). However, when the statutory right in question arises from a statute enacted after the Civil Rights Act that contains its own comprehensive remedial scheme, a court must address the legal issue of whether Congress intended for plaintiff's to use Section 1983 of the Civil Rights Act to expand upon the subsequent statute's remedial scheme. Id. at 794. Divining congressional intent in these circumstances primarily involves analysis of "the nature and extent of that statute's remedial scheme." Id.

In <u>Fitzgerald</u>, the Supreme Court reversed an opinion of the First Circuit and held that Title IX does not provide the kind of comprehensive remedial scheme that would preclude a claim under Section 1983 because recognition of the Section 1983 claim would "neither circumvent required procedures, nor allow access to new remedies." <u>Id.</u> at 796. However, in contrast to Title IX, the comprehensive remedial structure of the IDEA precludes a parallel action under Section 1983 to vindicate rights created in the IDEA. <u>See</u> <u>Smith v. Robinson</u>, 468 U.S. 992, 1011 (1984).[4] Indeed, the Supreme Court in <u>Fitzgerald</u> distinguished the remedial scheme of Title IX from "the 'unusually elaborate,' 'carefully tailored,' and 'restrictive' enforcement schemes" of, among other statutes, the IDEA, citing <u>Smith</u> in the process. <u>Fitzgerald</u>, 129 S. Ct. at 795.

<u>Diaz-Fonseca</u> squarely holds that Section 1983 cannot be used to remediate an IDEA remedy. 451 F.3d at 28-29. Similarly, Section 1983 cannot be used to remediate alleged violations of the ADA or the Rehabilitation Act. <u>Alsbrook v. City of Maumelle</u>, 184 F.3d 999, 1011 (8th Cir. 1999), <u>cert.</u> <u>granted</u>, 528 U.S. 1146 (2000), and <u>cert.</u> <u>dismissed</u>, 529 U.S. 1001 (2000) (holding that the comprehensive remedial provisions of the ADA indicate that Congress did not intend violations of Act to be actionable under § 1983); <u>Vinson v. Thomas</u>, 288 F.3d 1145, 1155-56 (9th Cir. 2002); <u>Lollar v. Baker</u>, 196 F.3d 603, 609-10 (5th Cir. 1999); <u>Holbrook v. City of Alpharetta</u>, 112 F.3d 1522, 1531 (11th Cir. 1997). Thus, in order to support a Section 1983 claim in this case, Ms. Millay must allege a constitutional violation above and beyond a

---

[4] Congress enacted the language of 20 U.S.C. § 1415(l) in response to <u>Smith</u>, but that provision does not preserve a claim under Section 1983. Rather, it states that the provisions of the IDEA cannot be construed to preclude a party from seeking remedies under the Constitution or under federal laws protecting the rights of children with disabilities, like the Americans with Disabilities Act and the Rehabilitation Act. Section 1983 is not a statute that confers any substantive protections, let alone substantive protections aimed at children with disabilities. <u>Baker v. McCollan</u>, 443 U.S. 137, 144 n.3 (1979) (observing that Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred");

violation of any of these three statutes. On the constitutional front, Ms. Millay alleges a violation of equal protection. (Am. Compl. ¶ 112; see also Pl.'s Consolidated Reply at 7-9, Doc. No. 18.) I address the equal protection theory in the context of the Individual Defendants' motion, below, and conclude that the facts of this case do not raise an equal protection claim.

Surry also argues that Ms. Millay fails to state a claim under Section 1983 because Ms. Millay fails to allege that the deprivations of which she complains were the result of an official custom or policy embraced by the municipality of Surry. (Doc. No. 13 at 17-18.)

> [A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). The custom or policy standard affords a solid alternative basis for dismissing the Section 1983 claim against Surry. Although it is a question of state law whether superintendents and/or principals have final policymaking authority with respect to the provision of special education services,[5] Jett v. Dallas Indep. Sch. Dist., 7 F.3d 1241, 1244 (5th Cir. 1993), the allegations in the amended complaint are not sufficient to support a plausible inference that it is the custom or policy of the Town of Surry to violate the equal protection rights of disabled students, whatever else the amended complaint has to say about the statutory rights conferred by the IDEA.

## B. The Individual Defendants' Motion

In the second motion, the Individual Defendants "move to dismiss each count . . . as it pertains to them." (Doc. No. 15 at 1.) For reasons that follow, I recommend that the Court grant

---

[5] Ms. Millay alleges superintendent participation and seeks a change in school policy. (Am. Compl. ¶¶ 19, 139 & Prayer for Relief ¶ 14.)

14

the motion with respect to Count IV, which is the only count of the amended complaint that targets the Individual Defendants.

### 1. There are no claims against the Individual Defendants under the IDEA, the ADA, or the Rehabilitation Act in this case.

The Individual Defendants argue that personal liability does not exist under the IDEA, the ADA, or the Rehabilitation Act. (Id. at 4-9.) Based on my reading of the amended complaint, I conclude that Ms. Millay has not asserted claims against the Individual Defendants under these statutes. The only count that is directed against the Individual Defendants is Count IV, the claim under Section 1983. (Compare Am. Compl. ¶¶ 182 & 184 with ¶ 186 and compare Am. Compl. Prayer for Relief ¶¶ 5, 6, 9 & 10 with Am. Compl. Prayer for Relief ¶¶ 12-16.) This was an appropriate way for Ms. Millay to frame her complaint because the Individual Defendants cannot be held personally liable in damages for violations of the IDEA, Diaz-Fonseca, 451 F.3d at 28 (citing Nieves-Marquez v. Puerto Rico, 353 F.3d 108, 124 (1st Cir. 2003)), or for violations of the ADA and the Rehabilitation Act, M.K. v. Sergi, 554 F. Supp. 2d 201, 230-31 (D. Conn. 2008) (collecting cases, but also noting some split of authority); S.W. v. Warren, 528 F. Supp. 2d 282, 298 (S.D.N.Y. 2007) (precluding both personal capacity and official capacity claims); Taylor v. Altoona Area Sch. Dist., 513 F. Supp. 2d 540, 556-60 (W.D. Penn. 2007) (collecting cases); Parenteau v. Prescott Unified Sch. Dist., No. CV 07-8072-PCT-NVM, 2009 U.S. Dist. Lexis 19605, *14-15, 2009 WL 536668, *6 (D. Az. Mar. 4, 2009) ("There is no individual liability for damages under Title II of the ADA or § 504 of the Rehabilitation Act.").

A review of the authorities collected and discussed in the cited cases will reflect that the law is less clear with respect to the availability of official-capacity claims against individual

15

officers having policymaking or supervisory authority over an agency. However, because Ms. Millay has brought these statutory claims against the Surry School District directly, there is no cause for her to also pursue official-capacity claims against individual school administrators because such official capacity claims would merely be redundant of the claims against Surry.

### *2. Ms. Millay fails to allege an adequate basis for liability under Section 1983.*

For reasons already discussed, Ms. Millay's claim under Section 1983 of the Civil Rights Act cannot be premised on rights arising under the IDEA, the Rehabilitation Act, or the Americans with Disabilities Act, each of which contains its own comprehensive remedial scheme. To have an actionable Section 1983 claim, Ms. Millay must allege facts sufficient to support a plausible finding of a constitutional violation. In her amended complaint, Ms. Millay makes reference to equal protection and she argues in her memorandum of law that her Section 1983 claim advances an equal protection claim. However, the allegations of the amended complaint are not sufficient to state a claim for violation of equal protection.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne Living Ctr., 473 U.S. 432, 439 (1985). Although it is true that the Equal Protection Clause of the Fourteenth Amendment protects individuals and not groups and that its protection extends to administrative acts of government, Engquist v. Or. Dep't of Agric., 128 S. Ct. 2146, 2151 (1st Cir. 2008), "equal" administration of a public school with respect to disabled and nondisabled students will not serve the interest of the disabled students. That is why Congress passed the IDEA and its predecessor statute; to provide funding and a procedural mechanism to guide the administration of special education services, so that students with disabilities were not

16

left to "sit[] idly in regular classrooms awaiting the time when they were old enough to 'drop out.'" Schaffer v. Weast, 546 U.S. 49, 52 (2005) (quoting H. R. Rep. No. 94-332, p.2 (1975)). When it comes to education, learning disabilities call for dissimilar treatment, not equal treatment. A constitutional guarantee of equal protection does not serve this need.

**Conclusion**

In sum, Ms. Millay alleges "exclusion" and "harassment" based on Surry's failure to provide to YRM the special education program that Ms. Millay believes the IDEA mandates. She does not allege that Surry or the Individual Defendants ever stated that YRM could not attend public school. Her allegations are more refined, by dint of the IDEA, to the effect that Surry and the Individual Defendants have never ordered the provision of comprehensive special education services to ensure a "free appropriate public education" at either Surry Elementary School or the Mount Desert Island High School. These allegations are subsumed in the IDEA and, consequently, are not actionable under the Rehabilitation Act or the ADA and do not achieve constitutional dimension.

For the reasons set forth above, I RECOMMEND that the Court GRANT the Surry School Department's motion to dismiss Counts II, III, and IV (Doc. No. 13) and also GRANT the Individual Defendants' motion to dismiss Count IV[6] (Doc. No. 15).

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within fourteen (14) days of being served with a

---

[6] A review of the amended complaint reflects that Count IV is the only count asserted against the Individual Defendants.

copy thereof.  A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.

  Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

           /s/ Margaret J. Kravchuk
           U.S. Magistrate Judge

December 22, 2009