UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| JOANNE M. MILLAY, | ) | |
| as parent of minor child YRM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 09-CV-411-B-W |
| | ) | |
| SURRY SCHOOL DEPARTMENT, | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON PLAINTIFF'S MOTION TO SUPPLEMENT THE RECORD**

Joanne M. Millay has filed a motion to supplement the administrative record. The instant civil action follows upon a due process hearing addressed to the appropriateness of special education programming and placement decisions associated with a summer 2008 extended school year and the 2008-2009 school year. Another action is pending in this Court in connection with a different hearing officer's decision addressed to the appropriateness of the placement ordered for the 2007-2008 school year and programming extending back to spring 2006. (Case No. 07-CV-178-B-W.) The Court referred the motion pursuant to 28 U.S.C. § 636. The motion is denied in part and granted in part as explained below.

**The Supplemental Materials**

Ms. Millay groups her supplemental materials into the following 12 "document" groups:

1. A collection of 16 audio compact disks recording IEP Team meetings on various dates between 2006 and 2009.

2. A letter from Susan J. Parks, Due Process Coordinator for the Maine Department of Education, who wrote Ms. Millay on December 16, 2009, to explain which CDs the

Department would send to the Court in connection with the instant appeal and why copies of every CD were not available for production to Ms. Millay.  All of the CDs referenced in the letter were recorded in 2008.

3.      A letter dated September 27, 2007, in which Ms. Millay requests an opportunity to be heard in regard to repeat requests to amend the contents of IEP Team meeting minutes produced by school personnel.

4.      A packet of mostly email printouts related to the creation of the Agency Index for the Administrative Record.  The gist of what the documents demonstrate, according to Ms. Millay, is that she was denied a meaningful opportunity to participate in the compilation of the Agency Index and the Administrative Record that it maps, ostensibly because much of the communication took place by email and Ms. Millay's personal email service is unreliable by her account.

5.      A packet of various documents without any apparent ordering (such as chronological).  The documents date to as early as April 2007 and as late as March 2009.  Many of the documents concern aspects of related case 1:07-CV-178 and address programming and scheduling disputes associated with the commencement of the 2007-2008 school year or procedural matters before Hearing Officer Peter Stewart who presided over the due process proceeding in the related case.  Other documents concern subsequent matters, including some documents that were addressed to the hearing officer in the instant proceeding.  The documents fall into multiple categories and only appear to be grouped together because Ms. Millay considers them relevant exhibits that may or may not already be included in the Administrative Record.

6.      A copy of YRM's current IEP, which is in place and in use at the Bangor High School.

7.      A copy of the IEP developed by the Perkins School for the Blind which had a bearing on the placement ordered by the Department in 2007 and by the Court in its stay put order in the related case.  This supplemental document also includes progress notes prepared by Perkins staff.

8.      A copy of portions of an IEP for a different student who attends a special education program at the Mount Desert Island High School, which is offered, according to Ms. Millay, to demonstrate that programming is available at that school similar to what YRM minimally requires.

9.      Copies of consultation reports prepared by Catholic Charities, letters to Ms. Millay from a consultative psychologist, and classroom notes prepared by staff at the Bangor High School, all with dates between September 2009 and February 2010.

10.     A packet of various documents, mostly letters, dating between June 2009 and February 2010.  These documents relate largely to transportation issues connected with travel to Bangor.  They also include correspondence in 2010 amounting to inquiries by School Union 93's Director of Special Education to the Mount Desert Island High School Director of Special Education about the possibility of transferring YRM's program from Bangor to MDI.

11.     Documents amounting to requests by Ms. Millay for reimbursement from the school system for expenses associated with YRM's education and related litigation.

12.     An affidavit prepared by Ms. Millay.  In her affidavit Ms. Millay asserts that Dr. Susan Bruce would be a witness with helpful testimony for the Court to consider, but that Dr. Bruce is not willing to supply an independent affidavit to the Court.  The affidavit also voices

Ms. Millay's dissatisfaction with the level of mainstreaming offered at Bangor High School, which she represents to be none at all.  The affidavit contains a plea in support of supplementation, stating that some of the supplemental materials reflect "recent perceptions of persons who have now become acquainted with YRM [that] differ vastly from the Defendants' unfair portrayal of her and her needs."

### Legal Standard

There is no right to *de novo* judicial review of matters addressed by a hearing officer under the Individuals with Disabilities Education Act (IDEA).  The IDEA indicates that the court "shall receive the records of the administrative proceedings [and] shall hear additional evidence at the request of a party. . . ."  20 U.S.C. § 1415(e)(2).  Ms. Millay does not have an automatic entitlement to supplement the contents of the administrative record.  Instead, "a party seeking to introduce additional evidence at the district court level must provide some solid justification for doing so."  Roland M. v. Concord Sch. Comm., 910 F.2d 983, 996 (1st Cir. 1990).  The administrative hearing is not a mere dress rehearsal to judicial proceedings.  Id. at 997.  At least to the extent that a party could have presented evidence to a hearing officer but chose not to, a court will act within its discretion if it denies a request to introduce the evidence during judicial review.  Id.  Indeed, such a result has been described by the First Circuit as the result that should ordinarily obtain.  Id.  The Court's authority to consider supplemental materials is designed as a "hedge against injustice" and an exercise of discretion that expands the administrative record should bear some correlation to that objective.  Id.

One category of supplemental material that has been allowed in other cases is information developed in the wake of a due process hearing that has some tendency to shed light on the reasonableness of the hearing officer's decision and, thus, could be relevant to the

determination of the correctness of that decision.  Mr. I v. Maine Sch. Admin. Dist. No. 55, No. 04-CV-165-P-H, 2004 WL 2397402, *3, 2004 U.S. Dist. Lexis 21525, *2-3 (D. Me. Oct. 27, 2004) (collecting cases).  Additional situations that invite record supplementation include gaps in a transcript due to mechanical failures, unavailable witnesses, and improper exclusion of evidence.

For reasons that follow, I deny Ms. Millay's requests in the main, with only limited exceptions.  Nothing in this Memorandum of Decision is meant to prevent Ms. Millay from citing findings or documents of record in the related action.  The Court may take judicial notice of that related proceeding to the extent it has relevance to the issues before the Court in this proceeding.

## Discussion

I discuss the documents according to the document groupings made by Ms. Millay.

### Document 1

Surry does not object to the inclusion of any recordings pertaining to the 2008-2009 school year, which is the only year at issue in this particular petition for judicial review.  Surry does object to the inclusion of recordings from 2006, 2007 or 2008 (if related to the 2007 summer or 2007-2008 school year) or from 2009 or 2010 (if related to the 2009-2010 school year).  I grant the request to supplement, but only to the extent of recordings of IEP Team meetings addressed to the 2008-2009 school year and to subsequent developments in YRM's programming at Bangor High School (the latest recording being that of an IEP meeting conducted October 5, 2009).

*Document 2*

Surry does not object to the inclusion of these materials in the administrative record, presumably because it considers them immaterial.  Despite the lack of an objection I will not allow this document as it has no apparent evidentiary value.  If there is an inaccuracy in the recordings filed by the Department or if a review of Ms. Millay's recordings will reveal editing or splicing of the other recordings, Ms. Millay can refer to the recordings to demonstrate the same.  (See Pl.'s Reply at 5, Doc. No. 40.)  Document 2 does not demonstrate that fact.

*Document 3*

Surry asserts that this document is already in the Administrative Record.  The request to supplement is denied as to this document.  If Ms. Millay wishes to cite this document in her brief in support of judgment on the record, she can cite the Administrative Record.

*Document 4*

Surry objects to these materials on the ground of relevance and because Ms. Millay has not ascertained whether the Administrative Record contained them or explained how they are material to the issues on appeal.  The Administrative Record was filed in this case on January 6, 2010.  Ms. Millay filed the instant motion one month later.  However frustrated Ms. Millay may be with the process of compiling the Administrative Record and the Agency Index, it is her burden to determine whether or not the materials in question are found in the Record and, if an item is not included, to articulate why the item is needed to achieve a just result in this proceeding.  The request to supplement is denied as to these materials.

*Document 5*

Surry objects to these materials as well, arguing that Ms. Millay's uncertainty about whether they can be found in the Administrative Record is not a sufficient justification for

granting her request.  I agree with Surry on this score and the request is denied as to this packet

of assorted documents with the exception of two emails authored by Kids Peace personnel in

April 2009 related to YRM's alleged enrollment at Kids Peace.

*Document 6*

Surry objects to inclusion of YRM's current IEP, arguing that it is irrelevant to the issue

of whether the program recommended by the IEP Team and offered by Surry (assuming they

were the same thing) was reasonably designed to confer a free appropriate public education for

YRM in the least restrictive environment.  For her part, Ms. Millay appears to be arguing that the

current IEP is illustrative of the fact that YRM can receive adequate services in a public school

setting without any requirement for significant input in the form of psychological services

administered daily by an in-house psychologist or comparably trained professional (which

apparently was the basis for a more restrictive proposed placement for 2008-2009).  This is the

most nettlesome aspect of the current motion.

On the one hand, it is unclear whether Ms. Millay is satisfied with the degree of

psychological services being delivered at present.  I note that the current IEP calls for

psychological services, but Ms. Millay describes the provision of these services as "extremely

sporadic," a rather unflattering characterization, and she never actually concedes that the current

level of psychological services is reasonably sufficient to result in a free appropriate public

education for her daughter.[1]  If Ms. Millay were offering the 2009-2010 IEP as an example

which fully met her criteria and was illustrative of what Surry could have offered in 2008-2009,

it might be a different issue.  Even assuming that Ms. Millay is satisfied with the current IEP—

---

[1]    In her reply brief Ms. Millay describes the Bangor High School IEP as "very minimal."  (Pl.'s Reply at 7, Doc. No. 40.)

or, to the extent it differs, the level of psychological services actually delivered in YRM's current placement—the Court cannot simply read that IEP and infer that the present specification regarding psychological services is the yardstick against which any prior IEP must be measured, and this is doubly true since Ms. Millay is apparently dissatisfied with this IEP as well.

On the other hand, Ms. Millay's primary contention, as I currently understand it, is that Surry greatly exaggerated the need for psychological services as an artifice to force a placement outside of the presumptive, least restrictive environment (a public school). In this light, YRM's current programming and her relative success in it may have something to say about the reasonableness of past conclusions or assumptions or assertions about what is minimally necessary to afford a free appropriate public education to YRM in the least restrictive environment.

Ultimately, the document is not sufficient in itself to support any particular finding in this regard. Therefore, I will not grant Ms. Millay's request as to this document or allow her to make reference to it in support of her position, which she may or may not be able to support with references to the more recent recordings of IEP Team meetings or whatever other materials exist in the Administrative Record that might be associated with the need for psychological services. I am mindful of Surry's objection that "the content of a different IEP in a different year in a different school system at a different time in YRM's life" is not a very clear comparator. (Def.'s Response at 7, Doc. No. 34.) I am also cognizant that aspects of the current placement may reflect a degree of compromise in positions insofar as the current placement arises out of mediation and participation in the same by the Department of Education, which evidently assisted in securing the current placement in Bangor. Ultimately, I am simply concluding here that Ms. Millay may not reference this document as the merits of this document are beyond

8

consideration in terms of assessing whether the 2008-2009 IEP was appropriate.[2]  The

document's evidentiary weight on the issue of the ability of a public school system to provide

appropriate psychological services to YRM  is greatly outweighed by the confusion, delay, and

distraction from the underlying administrative appeal that would be created if the parties were

allowed to use this forum to debate the adequacy of the 2009-2010 programming.

*Document 7*

Surry does not object to the Perkins IEP, which it says is already in the Record, but

objects to the inclusion of progress notes prepared by Perkins staff.   This request is denied.  Ms.

Millay can cite the copy of the Perkins IEP contained in the existing Administrative Record to

the extent she needs to cite it in support of her dispositive arguments.  I observe that her

argument for its inclusion does not even appear to concern the 2008-2009 school year, but rather

the adequacy of services afforded to YRM at Bangor High School.  (Mot. at 4.)  Ms. Millay fails

to explain why the progress notes are included in the document 7 materials and, therefore, the

request as to these additional materials is also denied.

*Document 8*

Surry objects to the inclusion of an IEP prepared for a different disabled student who

attends Mount Desert Island High School based on the fact that a reference to the IEP cannot

adequately support an inference that YRM should have been placed at Mount Desert Island High

School as Ms. Millay requested and also because Ms. Millay failed to attempt to make such a

---

[2]      In the event that this document enters the record, Surry "requests permission to depose providers at Bangor
[High School] on the issue of how the student actually has done in the program, and what the details of the program
actually are."  (Def.'s Response at 7 n.3.)  The threatened request is entirely too vague as stated  and is too broad in
scope insofar as it claims a need to depose multiple providers about YRM's overall performance and her overall
program at Bangor High School.  However, it represents exactly why allowing this document  into evidence would
simply turn this proceeding into a debate over the 2009-2010 IEP, rather than an analysis of the 2008-2009 school
year under appeal.

presentation before the hearing officer.  According to Ms. Millay, she was denied an opportunity to present such evidence to the hearing officer.  Neither party cites the Administrative Record to provide context for how the hearing officer addressed any particular evidentiary dispute associated with evidence of Mount Desert Island High School's special education capabilities. Moreover, although the issue of access to Mount Desert Island High School's special education program is related to this case insofar as it has some bearing on the question of whether the State of Maine is able to deliver appropriate special education services to deaf-blind students in the Hancock County region, this document invites too imperfect a comparison between YRM's needs and the needs of another student.

*Documents 9 & 10*

The request is denied as to these documents.  Ms. Millay fails to make a persuasive showing that these documents are likely to shed light on the reasonableness of the decision being reviewed in this proceeding.

*Document 11*

The request is denied as to these documents.  Evidence of costs does not need to be incorporated into the Administrative Record.  Evidence of costs can be introduced at a later juncture after resolution of the dispositive motions, if appropriate.

*Document 12*

The request is denied as to Ms. Millay's affidavit testimony about what others may have said to her about YRM or her current programming at Bangor High School subsequent to the due process hearing.  I am not persuaded that any of these statements can be considered admissions by Surry on the issues presently before the Court.  The request is also denied as to Ms. Millay's testimony about the absence of mainstreaming in YRM's program at Bangor High School.  This

10

testimony appears designed to entice the Court to proactively intervene to direct the course of current programming.  That would be inappropriate.  The final portion of the affidavit suggests that there are professionals in place at present who have a different assessment of YRM than what was portrayed by Surry in connection with the underlying due process hearings.  If the Court were to view Ms. Millay's description of her conversations with Dr. Murray Shulman[3] as a proffer in regard to a request to depose or otherwise obtain Dr. Shulman's testimony for the Court's consideration in this proceeding, that proffer does not suggest any prospect of testimony that would appreciably impact the issue of whether the hearing officer had sufficient evidence to support her decision concerning the programming/placement challenged in this proceeding.  The same can be said of Ms. Millay's description of exchanges she had with Steve Peer related to transportation concerns and his recent willingness to at least approach Mount Desert Island High School about the possibility of transferring YRM there.  For that reason, I would also deny a request to supplement the record with testimony from either Dr. Shulman or Mr. Peer.

Ms. Millay's representation concerning Dr. Susan Bruce raises a different issue. According to Ms. Millay, Dr. Bruce is presently involved with YRM's programming and has expertise related to deaf-blind education.  It appears that she might be another professional with relevant expertise who considers an autism-based approach to be inappropriate for a deaf-blind student.  However, I am not persuaded by Ms. Millay's "proffer" that testimony from Dr. Bruce is necessary to ensure a just result in this proceeding.  In particular, much of Ms. Millay's proffer appears to be directed in large measure toward pushing the Mount Desert Island placement prospectively.  Although there is a gestalt feel to this ongoing battle that it will never end until

---

[3]        Ms. Millay indicates that Dr. Shulman is the Director of Special Education at Bangor High School.

there is some development taking place in regard to public special education programming in
Hancock County, on the narrow question of whether the hearing officer erred in her judgment
there is no indication from Ms. Millay's proffer that Dr. Bruce's potential testimony is needed.
Even assuming that Dr. Bruce would offer an opinion critical of the hearing officer's decision or
the underlying placement indicated by Surry, the use of expert opinion testimony to analyze the
hearing officer's decision in hindsight runs counter to the presumption that the Court should
consider the record developed before the hearing officer.  Every petition for judicial review
under the IDEA would call for testimony from expert witnesses if it were allowed under the
circumstances of this case.  I note that the school psychologist at Perkins School for the Blind,
Mary Talbot Fox, Ph.D., offered testimony before the hearing officer, as did other experts
involved with the development (or attempt to develop) YRM's special education program.  This
is not a case, in other words, in which the hearing officer refused to allow testimony from experts
involved with the student at the time the disputed programming or placement decision was made.
The task of reviewing the hearing officer's decision is charged to this Court, and it would be
contrary to the judicial review scheme to permit a party to introduce new expert testimony on the
ultimate issue after the due process hearing is over, without some substantial justification for
doing so, such as a decision by the hearing officer that inappropriately precluded relevant expert
testimony at the due process hearing.[4]

---

[4]        Ms. Millay asserts that she could not have called Dr. Bruce as a witness at the due process hearing because
Dr. Bruce is a Massachusetts resident.  Obviously, out of state witnesses can participate in due process hearings.
The question is whether they may be compelled to do so if they are unwilling witnesses.  It is not clear to me from
this record what the extent of Dr. Bruce's involvement was at the time of the due process hearing in March and April
of 2009.  Nor can I determine whether Ms. Millay even attempted to secure Dr. Bruce's participation in the hearing.
It appears from Ms. Millay's affidavit (document 12) that Dr. Bruce was a participant in the IEP Team meeting of
December 16, 2008.  Ms. Millay asserts that some of Dr. Bruce's comments "were cut off" and that none of her
comments were included in the minutes of the meeting.  The Court will be able to review Dr. Bruce's input at the
December 16 meeting by listening to the audio recording.  If there is a legitimate contention that a material

**Conclusion**

Ms. Millay's Motion for Inclusion of Supplemental Materials (Doc. No. 32) is DENIED

IN PART and GRANTED IN PART.  The request is allowed to the extent of the following

materials:

> CD recordings of IEP Team meetings addressed to the 2008-2009 school year and
> to subsequent developments in YRM's programming at Bangor High School; and

> Two emails in Document 5 authored by Kids Peace personnel in April 2009.

<u>CERTIFICATE</u>

Any objections to this Order shall be filed in accordance with Fed.R.Civ.P. 72.

***So Ordered.***

March 19, 2010                                    /s/ Margaret J. Kravchuk
                                                 U.S. Magistrate Judge

---

statement by Dr. Bruce at that meeting has been deleted, then there may be cause to revisit the issue of obtaining
limited testimony from Dr. Bruce about her input at this specific meeting.